UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CESAR AUGUSTA FERNANDEZ,

        Plaintiff,        Case No. 1:12-cv-546

v.        Honorable Janet T. Neff

UNKNOWN SETLAC et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Cesar Augusta Fernandez is a state prisoner incarcerated in Pennsylvania, though the events giving rise to the complaint occurred while he was incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Michigan. Plaintiff sues the following employees of MCF: Librarian (Unknown) Setlac, Inspector (Unknown) Spoonass,[1] Deputy Superintendent (Unknown) Walker, Principal (Unknown) Barnett, Deputy Superintendent (Unknown) Smith, and Superintendent (Unknown) Curly.

Plaintiff alleges that he transferred to MCF in March 2010. At the time, he was "actively involved in his criminal appeal procedures in the state court(s)." (Compl., docket #1, Page ID#3.) In addition, he was preparing a "Federal Habeas Corpus and Writ of Mandamus in the Commonwealth Court of Pennsylvania" and was conferring with his attorney about filing a "Post-Conviction Relief Act[] Petition in the Court of Common Pleas of Berks County, Pennsylvania." (*Id.*) After his arrival at MCF, he discovered that its facilities were not adequate to allow him to continue his legal work. Several months later, after Plaintiff complained about the issue, prison officials gave him access to several typewriters, Pennsylvania casebooks, and a "computerized access system" for "case review and recall." (*Id.* at Page ID#4.)

In August 2010, Plaintiff used the computer system to conduct legal research and to prepare a draft of his "Federal Habeas Corpus and Writ of Mandamus Motions and Briefs for submission to the Federal Courts." (*Id.*) When he finished his draft, he printed it on the library printer. The head librarian at MCF retrieved the printed copies, charged Plaintiff for the printing costs, and then gave them to Plaintiff. On January 10, 2011, Plaintiff used the computer system to

---

[1]Also referred to as "Spoomass" in the complaint. (*See* Compl., docket #1, Page ID#7.)

complete a final draft of the foregoing documents. He then printed them on the library printer, as he had done before. This time, however, Defendant Setlac retrieved them from the printer and confiscated them, telling Plaintiff that he was not authorized to use the computer "for this purpose." (*Id.*) When Plaintiff asked for an explanation, she told him, "'YOU CAN'T HAVE THIS . . . YOU CAN'T DO THIS TYPE OF WORK.'" (*Id.*) She refused to return his documents, to issue a confiscation slip, or to reimburse Plaintiff for his printing costs.

Plaintiff then returned to his housing unit to try to resolve the issue, and an officer told him to speak with Inspector Spoonass. Spoonass retrieved the documents and then met with Plaintiff. Spoonass told Plaintiff that the documents did not violate any "known" policy, but that he would investigate the issue further before returning them to Plaintiff. (*Id.* at Page ID#4.) Spoonass indicated that he would have a meeting with Deputy Superintendant Walker, Principal Barnett (who is in charge of library staff), and Librarian Setlac. Plaintiff asserts that, "because of time constraints placed on Plaintiff by the State and Federal courts," Defendants' decision to withhold his documents "irreparably hindered" his "appellate p[ro]ce[e]ding." (*Id.*)

On or around January 27, 2011, Principal Barnett hand-delivered to Plaintiff a "memo" advising Plaintiff that he would no longer be allowed to use "library computer no. #2." (*Id.* at Page ID#5.) On March 9, 2011, Plaintiff asked Officer Villapondo (who is not a Defendant in this action) for a "1983 form"; Villapondo responded, "I aint giving you Sh#t . . . I was told not to help you with anything or even let you on the computers." (*Id.*) Plaintiff then asked another inmate, Anthony Harrell, to assist him in "executing his legal appeals." (*Id.*) Plaintiff also filed a prisoner grievance regarding his confiscated documents. Harrell was sent to the restricted housing unit and given a disciplinary sanction for helping Plaintiff. MDOC officials also confiscated property in

Harrell's possession, including documents belonging to Plaintiff. Plaintiff asked MDOC "Security and Administrative Officials" to retrieve his documents from Harrell's confiscated property, but they refused. (*Id.*) Harrell was later transferred to a facility in Pennsylvania. Plaintiff filed a second grievance about the matter but his documents were never returned.

Based on the foregoing, Plaintiff claims that Defendants violated his rights under the First, Fourth, Eighth and Fourteenth Amendments to the Constitution. As relief, Plaintiff seeks compensatory and punitive damages.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Access to the Courts

Plaintiff asserts that Defendants have impaired his First Amendment right of access to the courts, either by failing to provide adequate resources for legal research or by confiscating his legal documents. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from

erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. "[A] prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Furthermore, in order to state a viable claim, a plaintiff must show "actual injury," *i.e.* prejudice to pending or contemplated litigation. *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. "Examples of actual prejudice . . . include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin–Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

In addition, the underlying action must assert a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999). The Supreme Court squarely has held that, to plead injury to a non-frivolous claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). In other words, the plaintiff's allegations "must identify a 'nonfrivolous,' 'arguable' underlying claim." *Id.* (quoting *Lewis*, 518 U.S. at 353 & n.3).

Plaintiff's allegations do not satisfy the foregoing requirements. Plaintiff alleges that he was involved in several pending or anticipated legal challenges to his criminal conviction when he arrived at MCF, including: an appeal from his conviction, one or more post-conviction motions in state court, and applications for writ of mandamus and for habeas corpus relief in federal court. For several months after his arrival, the resources at MCF were allegedly inadequate to allow him

to conduct legal research for these proceedings. Later, Defendants confiscated a draft of his federal application for habeas relief and for writ of mandamus and then denied him access to one of the library computers. Accepting all of the foregoing as true, however, Plaintiff does not indicate how the lack of available resources or the confiscation of his documents meaningfully prejudiced him. Plaintiff does not allege, for instance, that he was unable to file his appeals or post-conviction motions in a timely manner, or that he lost an available remedy. Indeed, Plaintiff indicates that he was represented by counsel on appeal from his criminal conviction; thus, it is not clear why limitations on his ability to conduct legal research would have prejudiced him in those proceedings. *Cf. Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983) (holding that appointment of counsel satisfies the state's obligation to provide full access to the courts); *Leveye v. Metro. Pub. Defender's Office*, 73 F. App'x 792, 794 (6th Cir. 2003) (rejecting a prisoner's access-to-the-courts claim because he was represented by counsel, and noting that the "right of access guarantees access to the *courts*, not necessarily an adequate prison law library") (emphasis added). Moreover, with respect to Plaintiff's federal habeas application and his other collateral challenges to his criminal conviction, Plaintiff's allegations are deficient because they do not identify any underlying non-frivolous claims as required by *Christopher*. *See Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (applying the pleading requirements of *Christopher* to a prisoner's claim that officials interfered with his post-conviction motion for relief from judgment). In short, Plaintiff's assertion that Defendants "irreparably hindered" his "appellate proceedings" is too vague and conclusory to show actual injury. (*See* Compl., docket #1, Page ID#4.)

Finally, Plaintiff implies that he intended to file a civil rights action when he asked Officer Villapondo for a § 1983 form in March 2011; however, Plaintiff fails to allege any injury

resulting from Villapondo's actions. In addition, Plaintiff fails to identify the underlying claims that he intended to pursue. Clearly, Villapondo's conduct did not prevent Plaintiff from raising the claims asserted in the instant action. Therefore, for all of the foregoing reasons, Plaintiff fails to state an access-to-the-courts claim.

### B. Retaliation

Plaintiff claims that Defendants Curly and Spoonass confiscated his legal documents and refused to return them in retaliation for Plaintiff's exercise of his legal rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also*

*Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented facts to support his conclusion that Curly or Spoonass retaliated against him because of any protected conduct. Indeed, Plaintiff's only allegation regarding Defendant Curly is that Curly and Defendants Walker, Smith, and Barnett, "confiscat[ed] Plaintiff's legal documents and refus[ed] to return them." (Compl., docket #1, Page ID#6.) But clearly Setlac is the one who confiscated Plaintiff's documents in the prison library; there are no other allegations to distinguish Curly's actions from that of the other Defendants. Thus, the nature of Curly's role in the alleged misconduct is unclear. With respect to Spoonass, Plaintiff alleges that he kept the documents while he investigated Setlac's conduct. In other words, Spoonass maintained the status quo for a period of time during his investigation. Consequently, it is not at all clear that Defendants Curly and Spoonass took an adverse action against Plaintiff, much less one that would deter an ordinary person from engaging in protected conduct.

Even if Plaintiff's allegations satisfy the adverse-action element of a retaliation claim, however, they do not satisfy the causation element. None of Plaintiff's allegations suggest that any conduct by Defendants Curly and Spoonass was motivated by Plaintiff's protected activity. Therefore, Plaintiff fails to state a retaliation claim against them. *See Iqbal*, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### C. Due Process

Defendants Curly, Walker, Smith, Barnett and Setlac allegedly violated Plaintiff's right to due process by confiscating and withholding his legal documents "without legal justification or authorization." (Compl., docket #1, Page ID#6.) This claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Plaintiff's claim is expressly premised upon allegedly unauthorized acts of state officials; thus, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive

04.07.112, ¶ B (effective July 9, 2012). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim will be dismissed.

### D. Fourth Amendment

Plaintiff also claims that Defendant Setlac violated Plaintiff's right to be free from unreasonable searches and seizures. In *Hudson v. Palmer*, the Supreme Court considered and rejected a claim similar to Plaintiff's. *See Hudson*, 468 U.S. at 517. In that case, a prison official searched a prisoner's cell and destroyed some of his legal papers. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed. First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523-24 (internal citation omitted). The Court then determined that the official's *search* of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526.

According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527-28. For similar reasons, the Court held that the *seizure* of the prisoner's property did not violate the Fourth Amendment. *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.* Thus, "the Fourth Amendment does not protect against seizures in a prison cell[.]" *Id.*

The principles in *Hudson* also apply to Plaintiff's case. If the Fourth Amendment does not protect legal papers in Plaintiff's cell from seizure by prison officials, then, by extension, it does not protect legal documents prepared by Plaintiff in the prison library. Prison officials must be free to monitor the use of prison resources and to seize items that, in their view, constitute a misuse of those resources. Therefore, Plaintiff does not state a Fourth Amendment claim.

### E. Eighth Amendment

In addition, Plaintiff contends that Setlac's act of confiscating his legal documents violated his right to be free from cruel and unusual punishment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The

Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). It is axiomatic that "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Setlac did not subject Plaintiff to unnecessary and wanton infliction of pain. Nor did she deprive him of a minimal civilized measure of life's necessities, such as food, medical care or sanitation. Thus, Plaintiff's Eighth Amendment claim is without merit.

### F. Supervisory Liability

Villapondo is identified in the allegations of the complaint, though he is not named as a Defendant. To the extent that Plaintiff sues Defendants solely because of their supervisory role or authority over Villapondo, or any other prison official, Plaintiff fails to state a § 1983 claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Therefore, a Defendant's supervisory role over another individual does not, without more, give rise to a § 1983 claim against that Defendant.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: November 16, 2012                  /s/ Janet T. Neff
                                          Janet T. Neff
                                          United States District Judge